[No. 5760. Decided November 13, 1905.]

THE CITY OF SEATTLE, *Appellant,* v. T. D. HINCKLEY,
*Respondent.*[1]

HEALTH—FIRE ESCAPES—MUNICIPAL REGULATION—APPLICATION TO
BUILDINGS ALREADY CONSTRUCTED—STATUTES—RETROSPECTIVE EFFECT—
CONSTRUCTION. A municipal ordinance requiring all buildings of a
certain description within the fire limits to be supplied with certain
described appurtenances as fire escapes, is intended to be retroactive
and applies to all buildings, including those duly equipped with other
fire escapes under former ordinances, especially in view of a clause
making not only the construction or alteration of a building without
fire escapes, but the violation of "any provision" of the act, punish-
able by fine.

SAME—POLICE POWER—VIOLATION OF MUNICIPAL REGULATIONS—
VESTED RIGHTS IN COMPLIANCE WITH EXISTING REGULATION. A mu-
nicipal ordinance requiring fire escapes upon buildings of a certain
description within prescribed limits, is within the police power, and
impairs no vested rights by reason of applying to buildings erected
in compliance with a previous ordinance requiring a different kind
of fire escapes.

Appeal from a judgment of the superior court for King
county, Griffin, J., entered April 12, 1905, upon stipulated
facts, acquitting the defendant of the violation of a munici-
pal ordinance respecting fire escapes, upon an appeal from a
conviction in a justice's court. Reversed.

*Ellis De Bruler,* for appellant.

*Fred H. Peterson* and *H. C. Force,* for respondent.

DUNBAR, J.—The city of Seattle, appellant in this case,
instituted a criminal action against the defendant and re-
spondent for the violation of a certain ordinance of the said
city of Seattle. The respondent was tried and convicted in
a police court, and fined in the sum of $50. Upon appeal to
the superior court, the case being submitted upon a state-
ment of facts, the respondent was acquitted. The essential

[1] Reported in 82 Pac. 747.

part of the ordinance the violation of which is charged is as follows:

"That all hotels, office buildings, factories, tenements, and lodging houses, more than three stories in height, shall have at the ends of each main hallway on outside of building a fireproof stairway leading from within nine feet of the grade line of the street or alley to top of roof."

Then follows a more minute description of the fire escape required. Section 126 is as follows:

"That any owner, builder, contractor, or other person who shall construct, alter, repair, or cause to be constructed, altered, or repaired, and any architect having charge of the same, who shall permit to be constructed, altered, or repaired, any building or other structure in violation of any provision of this ordinance, or who shall violate any provision thereof, unless other penalty for such violation be provided herein, shall be subject to a fine," etc.

The statement of facts upon which the case was submitted showed that the respondent was the owner of a four-story brick building described in the complaint, that it was being used for office purposes, and located in the city of Seattle. It is admitted that respondent refused to erect and place at the north end of the main hallway of the said building, as required by ordinance, the fire escape required by said ordinance. It was also admitted, that in the year 1898 he had erected on the north side of said building, being at the north end of the main hallway described in the complaint, a fire escape, which was then erected under the supervision and direction of the fire chief of the said city of Seattle, and in compliance with the ordinances then regulating fire escapes; that the fire escape which he had erected was, at the time of its construction, a good and sufficient fire escape, and that it was in practically the same condition as when the same was erected; but that said fire escape and appurtenances do not comply with the ordinance of the city above mentioned. It was also admitted that said fire escape, together with said

platform and appurtenances, is sound and serviceable and fit for use, but that the same is not as serviceable and not as convenient and not as safe as the iron stairways provided for under said ordinance.

The contention of the respondent is that the ordinance was not retrospective in its scope, and that the city council did not intend in its passage that houses erected before the passage of the ordinance should be subject to its provisions; that it was not intended to interfere with fire escapes then existing; and that, if such ordinance should be so construed, it would be unconstitutional as depriving respondent of existing rights. The trial court took this view, and the respondent was acquitted and discharged from custody.

We think the court erred in its construction of this ordinance. It may be conceded that the fundamental rule of construction of statutes is that they shall not be construed to be retrospective unless the retrospective intention is expressed, or can be plainly gathered from the provisions of the act. But it seems to us that the language of this ordinance is plain and unequivocal. When it is said that all hotels, office buildings, factories, tenements, and lodging houses more than three stories in height, shall have a certain described fire escape, it seems to us it was the plain intention of the city council that all buildings described should have such appurtenances, and that, if it had been the intention to except any buildings from its provisions, such exception would have been expressed. The language is as broad and comprehensive as could well have been used. In reason, too, it would seem that, if the city council, from observation or investigation, had determined that a certain character of fire escape was necessary for the preservation of people inhabiting certain classes of houses, it would be as important in the interest of the safety of the inhabitants of such houses to apply the rule to houses already built as to those thereafter built. There can be no doubt as to the constitutionality of this act under this construction.

And there is no merit in the contention that the respondent had any inherent or vested right because he had complied with the law existing at the time he built. There is no such' thing as an inherent or vested right to imperil the health or impair the safety of the community. But to be. protected against such impairment or imperilment is the universally recognized right of the community in all civilized governments—a protection which the government not only has a right to vouchsafe to the citizens, but which it is its duty to extend in the exercise of its police power. When the subject of legislation is a proper subject of such exercise, as in this case it undoubtedly is, private rights are always held subservient to the public weal, and the legislature must be the judge of the propriety or extent of the remedy. · The object of this ordinance was to protect persons from fire, and while it is agreed that the fire escape already existing was in working order, it is also stipulated that it was not as convenient or safe for use as the stairway provided for by the ordinance. The people have a right to the safest method that can be found and determined by the legislature. Conditions in cities in relation to buildings are. constantly changing. Dangers from fire are increasing by reason of the change in the construction of buildings, and for many other reasons which might be conceived. In addition to this, mechanical science is making known safeguards, apparatus, and methods of extinguishing fires which were not known before. Theaters and other public buildings are built with certain kinds and characters of fire escapes, which in emergencies are found to be faulty, and not the best that could be used. It would be a sad commentary on the law if municipalities were powerless to compel the adoption of the best methods for protecting life in such cases, simply because the confessedly faulty method in use was the method provided by law at the time of its construction. The changing of fire escapes is only an incident in the expense of the construction or repair of a building.

The same reason that impelled the court in *Buffalo v. Chadeayne,* 134 N. Y. 163, 31 N. E. 443, to hold that the ordinance in that case applied only to buildings thereafter to be constructed, would not apply here. There the question came up on an ordinance preventing the erection of wooden houses within certain fire limits. At the time the houses were built, or partly built, they were built under the sanction of the authorities, and after the work had been partly accomplished and the contracts let, the fire limits were changed; and the court very properly held that the charter authorizing the making of ordinances by the common council "to prescribe the limits within which wooden buildings shall not be erected," pertained to the future, and that an ordinance made thereunder, prohibiting, without the council's permission, the erection of "any building constructed in whole or in part of wood within certain limits," referred to buildings to be erected in the future, and not to buildings in existence and erected by such permission.

However, this question was squarely decided in *Commonwealth v. Roberts,* 155 Mass. 281, 29 N. E. 522, 16 L. R. A. 400, a sewage case, where it was held that the act applied to houses built after the act went into operation, as well as those having been constructed before. The language of that act was as follows:

"Every building in the city of Boston used as a dwelling, tenement, or lodging house, or where persons are employed, shall have at all times such number of good and sufficient water-closets," etc.,

and the court, in speaking of the act, says:

"The defendant contends that the act was not intended to apply to houses already built when the act went into operation. But while the act is broad enough to apply to all buildings, the language of the section imposing a penalty on 'any person violating any provision of this act' . . . is prospective in its operation, and applies to violations which continue after its passage, or which then come into existence."

The court further says:

"The defendant, however, contends that, as her structure was lawful when built, an act of the legislature which would render its use unlawful would be unconstitutional, citing *Commonwealth v. Alger*, 7 Cush. 53, 103. The statutes there in controversy related to harbor lines in Boston, and were not police regulations affecting the public health; and the language of Chief Justice Shaw in that case does not apply to a case like the one now under consideration."

It will be noted that the section imposing the penalty in the case at bar provides that any owner, builder, etc., who shall construct, alter, repair, etc., or who shall violate any provision thereof, shall be subject to a fine, etc. If the act were to be construed to apply only to the construction, alteration, or repair of buildings after the passage of the act, there would have been no room for the further expression, "or who shall violate any provision thereof." Construing the sections of the ordinance together, and taking into consideration what must have been the reason for the passage of the ordinance, we are forced to the conclusion that it was the intention of the council to make the provision in relation to fire escapes uniform and universal, as applied to the classes of houses mentioned therein.

The judgment will be reversed.

MOUNT, C. J., ROOT, FULLERTON, HADLEY, and CROW, JJ., concur.

RUDKIN, J. (concurring)—I concur in the construction placed on the city ordinance in the majority opinion, but, if the reversal of the judgment carries with it the implication that the respondent may be retried for the same offense, I express no opinion on that question.